## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**FRANKLYN RAMLOCHAN**
Plaintiff

v.

**RAILSERVE, INC.**
Defendant

CIVIL ACTION NO. 17-3854

## DEFENDANT RAILSERVE, INC.'S MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THOMPSON COBURN LLP**
Timothy J. Sarsfield, *admitted pro hac vice*
One US Bank Plaza, Suite 2700
St. Louis, MO 63101
(314) 552-6000
(314) 552-7000 (fax)
tsarsfield@thompsoncoburn.com

Attorneys for Defendant Railserve, Inc.

6780639.19

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ ii

I.    STATEMENT OF THE CASE ............................................................................. 1

II.   ARGUMENT ......................................................................................................... 2

    A.   Rule 56 Is Designed To Eliminate Unsupported Claims. ................................. 2

    B.   Plaintiff's PHRA Claim For Unlawful Suspension In June 2014 Is Time Barred. ........ 3

    C.   Plaintiff's Retaliation Claim For Unlawful Suspension in June 2014 Fails.  He Did Not Engage In Even Arguable Protected Conduct Until After The Suspension. .......................... 4

    D.   Plaintiff's Section 1981 Claim For National Origin Discrimination Fails.  Section 1981 Does Not Prohibit National Origin Discrimination. ................................................................. 5

    E.   Plaintiff's Discrimination Claims Under Title VII, Section 1981 And The PHRA Fail On The Merits. ....................................................................................................................... 5

        1.   The June Suspension ....................................................................................... 6

        2.   The Discharge .................................................................................................. 8

    F.   Plaintiff's Retaliation Claim For Unlawful Discharge Fails On The Merits. ............... 12

III.  CONCLUSION .................................................................................................... 15

CERTIFICATE OF SERVICE ....................................................................................... 16

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

Abels v. DISH Network Service, LLC,
  507 Fed. Appx. 179 (3d Cir. 2012)................................................................7

ACT, Inc. v. Sylvan Learning Systems, Inc.,
  296 F.3d 657 (8th Cir. 2002) ......................................................................2

Ade v. Kidspeace Corp.,
  401 Fed. Appx. 697 (3d Cir. 210).................................................................9

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986)...................................................................................2

Anderson v. Wachovia Mortg. Corp.,
  621 F.3d 261 (3d Cir. 2010)........................................................................4

Bazargani v. Haverford State Hosp.,
  90 F.Supp. 2d 643 (E.D. Pa. 2000)..............................................................8

Boykins v. SEPTA,
  722 Fed. Appx 148 (3d Cir. 2018)...............................................................5

Cambria v. Association of Flight Attendants,
  2005 WL 1563343 (E.D. Pa. June 30, 2005).................................................6

Caprio v. Peters,
  345 Fed Appx. 824 (3d Cir. 2009)...............................................................6

Celotex Corp. v Catrett,
  477 U.S. 317 (1986)...................................................................................2

Chernobai v. Hydraulax Products, Inc.,
  2015 WL 710464*3 (E.D. Pa. Feb. 19, 2015) ........................................11, 12

Clark County School District v. Breeden,
  532 U.S. 268 (2001)..................................................................................15

Connelly v. Lane Constr. Corp.,
  809 F.3d 780 (3d Cir. 2016)........................................................................4

Daniels v. School Dist. of Philadelphia,
  776 F.3d 181 (3d Cir. 2015)........................................................................6

Deans v. Kennedy House, Inc.,
    998 F.Supp.2d 393 (E.D. Pa. 2014) ...............................................................8, 12

Fuentes v. Perskie,
    32 F.3d 759 (3d Cir. 1994)........................................................................3, 5, 6

Gardner v. School Dist. of Philadelphia,
    636 Fed. Appx. 79 (3d Cir. 2015)..................................................................2, 6

Geddis v. Univ. of Delaware,
    40 Fed. Appx. 650 (3d Cir. 2002) ..................................................................10

Hamilton v. SEPTA,
    2014 WL 2862146 (E.D. Pa. June 24,2014) ...................................................6

Henderson v. Mercy Catholic Medical Ctr.,
    2018 WL 3344655*8 (E.D. Pa. 2018) ...........................................................13

Jones v. Southeastern Pa. Transp. Auth.,
    796 F.3d 323 (3d Cir. 2015)............................................................................5

Kautz v. Met-Pro Corp.,
    412 F.3d 463 (3d Cir. 2005)............................................................................6

Keller v. Orix Credit Alliance, Inc.,
    130 F.3d 1101 (3d Cir. 1997)......................................................................3, 7

Krause v. Am. Sterilizer Co.,
    126 F.3d 494 (3d Cir. 1997)..........................................................................15

LaRochelle v. Wilmac Corp.,
    2017 WL 4475964 (E.D. Pa. Sept. 26, 2017) ..............................................3, 9

Leitgen v. Franciscan Skemp Healthcare,
    630 F.3d 668 (7th Cir. 2011) .......................................................................4, 13

Major v. General Electric Co.,
    714 F.3d 527 (7th Cir. 2013) ...........................................................................2

Maull v. Div. of State Police,
    39 Fed. Appx. 769 (3d Cir. 2002)...................................................................11

McDonnell Douglas v. Green,
    411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed. 2d 66 (1973)....................................5

McNeil v. Greyhound Lines, Inc.,
    69 F.Supp.3d 513 (E.D. Pa. 2014), aff'd, 628 Fed. Appx. 101 (3d Cir. 2015).........................9

Mikell v. Marriott Intern., Inc.,
    789 F.Supp.2d 607 (E.D. Pa. 2011) ..................................................................14, 15

Mimi Ma v. Westinghouse Elec. Co.,
    559 Fed. Appx. 165 (3d Cir. 2014) ..........................................................................7

Moore v. City of Phila.,
    461 F.3d 331 (3d Cir. 2006)......................................................................................4

Nadesan v. Citizens Financial Group,
    673 Fed. Appx. 47 (2nd Cir. 2016) ..........................................................................5

Ogden v. Keystone Residence,
    226 F.Supp. 2d 588 (M.D. Pa. 2002) ......................................................................11

Outten v. Genesis Health Care, LLC,
    2014 WL 3964918 (E.D. Pa. Aug. 12, 2014) ...........................................................7

Phillips v. SEPTA,
    2018 WL 827440 (E.D. Pa. Feb. 12, 2018) .....................................................4, 8, 9

Pourkay v. City of Philadelphia,
    2009 WL 1795814 (E.D. Pa. June 23, 2009) ...........................................................3

Reeves v. Sanderson Pluming Products, Inc.,
    530 U.S. 133 (2000) .................................................................................................2

Sanchez v. SunGuard Availability Servs. LP,
    362 Fed. Appx. 283 (3d Cir. 2010) ........................................................................14

Sempier v. Johnson & Higgins,
    45 F.3d 724 (3d Cir. 1995)......................................................................................10

Sulit v. Fed Reserve Bank of Philadelphia,
    2009 WL 2776480 (E.D. Pa. Aug. 28, 2009) ..........................................................9

Taylor v. Cherry Hill Bd. of Ed.,
    85 Fed. Appx. 836 (3d Cir. 2004) ............................................................................2

Torgerson v. City of Rochester,
    643 F.3d 1031 (8th Cir. 2011) .............................................................................2, 5

Uber v. Slippery Rock University of Pa.,
    887 A.2d 362 (Pa. Commw. Ct. 2005) ....................................................................3

Vaughan v. Boeing Company,
    2018 WL 2324224 (3d Cir. 2018)............................................................... *passim*

Williams v. Philadelphia Hous. Authority,
      380 F.3d 751 (3d Cir. 2004)....................................................................................14

Young v. City of Philadelphia,
      651 Fed. Appx. 90 (3d Cir. 2016) ....................................................................13, 15

**Statutes**

43 P.S. Section 959(h) ...............................................................................................3

Civil Rights Act of 1866 ............................................................................................1

Civil Rights Act of 1964 Title VII, 42 U.S.C. §2000(e)...............................................1

Fair Labor Standards Act ...........................................................................................7

Pennsylvania Human Relations Act....................................................................1, 3, 5

Section 1981.................................................................................................1, 4, 5, 13

Title VII ...............................................................................................................4, 5, 13

**Other Authorities**

Rule 56 ........................................................................................................................2

I.    **STATEMENT OF THE CASE**[1]

Plaintiff Franklyn Ramlochan ("Plaintiff") is a former Railserve, Inc. ("Railserve") employee.  Facts, ¶1.  He alleges he was both unlawfully suspended in June 2014 and unlawfully terminated in December 2014.  (Facts, ¶ 3).  Plaintiff alleges both the suspension and discharge were in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e) ("Title VII"), the Civil Rights Act of 1866 ("Section 1981") and the Pennsylvania Human Relations Act ("PHRA").  (Id., ¶2)  Plaintiff claims that both his suspension and discharge were driven by his race/color (Count I), and/or his national origin/ethnicity (Count II) and/or in retaliation for supposed protected conducted (Count III).  (Id.,¶2)

Summary Judgment should enter on all three counts.  First, Plaintiff's PHRA claim regarding the June suspension is time barred (regardless of whether predicated upon a discrimination or retaliation theory).  Second, his retaliation claim based upon his June suspension claim fails under any statute, because he did not even arguably engage in protected conduct until well <u>after</u> his suspension.  Third, his national origin claim under Section 1981 fails, as national origin is not protected under that statute.  Fourth, his discrimination claims regarding his June suspension and December discharge fail on the merits (i.e., he was suspended in June and later discharged in December based upon legitimate non-discriminatory reasons).  (Id., ¶14, 15, 17, 36)  Fifth, his retaliation claim regarding his discharge fails on the merits (i.e., he was discharged for legitimate non-retaliatory reasons).  (Id.)

---

[1] Railserve's Statement of Facts is fully incorporated by reference herein.  References to the facts as needed will be "Facts, ¶__."

II.   **ARGUMENT**

A.   <u>Rule 56 Is Designed To Eliminate Unsupported Claims.</u>

This is an employment discrimination case, but standard summary judgment principals

apply. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256-57 (1986) (rejecting argument that

claims involving state of mind are entitled to greater deference on summary judgment); <u>Reeves</u>

<u>v. Sanderson Pluming Products, Inc.</u>, 530 U.S. 133, 148 (2000) (courts should not "treat

discrimination differently from other ultimate questions of fact"); <u>Torgerson v. City of</u>

<u>Rochester</u>, 643 F.3d 1031, 1043 (8th Cir. 2011); <u>Major v. General Electric Co.</u>, 714 F.3d 527, 532

(7th Cir. 2013).  Thus, summary judgment is not a disfavored procedural device, but an integral

part of the Federal Rules of Civil Procedure.  <u>Celotex Corp. v Catrett</u>, 477 U.S. 317, 327 (1986).

Summary judgment must issue unless there is record evidence creating a genuine issue of

material fact as to each essential element of Plaintiff's case.  <u>Celotex</u>, 477 U.S. at 322-23.

A fact is not "material" unless it is outcome determinative.  <u>Anderson</u>, 477 U.S. at 248.

A dispute is not genuine unless there is sufficient evidence from which a reasonable fact finder

could resolve the dispute in favor of the non-moving party.  <u>Id.</u> at 429.  While Plaintiff is entitled

to all reasonable inferences, Plaintiff is not entitled to unreasonable inferences.  <u>ACT, Inc. v.</u>

<u>Sylvan Learning Systems, Inc.</u>, 296 F.3d 657, 666 (8th Cir. 2002); <u>Vaughan v. Boeing Company</u>,

2018 WL 2324224 *5 (3d Cir. 2018) (refusing to draw "unreasonable inference").  In the context

of employment discrimination claims, "conclusory allegations of discrimination are insufficient

to defeat summary judgment." <u>Taylor v. Cherry Hill Bd. of Ed.</u>, 85 Fed. Appx. 836, 839 (3d Cir.

2004).

The critical issue in this case is not whether Plaintiff committed the acts charged or

whether Railserve's actions were fair or wise.  <u>Gardner v. School Dist. of Philadelphia</u>, 636 Fed.

Appx. 79, 86 (3d Cir. 2015) (plaintiff must show more than employer's decision was "wrong or mistaken") (quotation omitted); <u>Fuentes v. Perskie</u>, 32 F.3d 759, 765 (3d Cir. 1994). ("[T]he factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent"); <u>Keller v. Orix Credit Alliance, Inc.</u>, 130 F.3d 1101, 1109 (3d Cir. 1997). There must be sufficient evidence from which a reasonable jury could find Plaintiff's June suspension or December discharge to be unlawfully motivated. <u>LaRochelle v. Wilmac Corp.</u>, 2017 WL 4475964 *6 (E.D. Pa. Sept. 26, 2017) ("Liability cannot be established based upon a fact finder's '<u>mere disbelief</u>' of defendant's proffered reasons for an adverse action, but rather upon the [fact finders] <u>affirmative belief</u> of the plaintiff's contention that the action was taken on the basis of an impermissable discriminatory criterion") (quotations and citations omitted, emphasis in original). A reasonable jury could not find either the June suspension or December discharge to be unlawfully motivated. Summary judgment should issue.

      B.     <u>Plaintiff's PHRA Claim For Unlawful Suspension In June 2014 Is Time Barred.</u>

Plaintiff's PHRA claim regarding his suspension in June 2014 is time barred, regardless of whether advanced under a discrimination or retaliation theory. The PHRA requires an allegedly aggrieved employee to file a Complaint with the Pennsylvania Human Relations Commission ("PHRC") within 180 days of the claimed adverse action or it is time barred. 43 P.S. Section 959(h); <u>Uber v. Slippery Rock University of Pa.</u>, 887 A.2d 362, 366-67 (Pa. Commw. Ct. 2005); <u>Pourkay v. City of Philadelphia</u>, 2009 WL 1795814 *4 (E.D. Pa. June 23, 2009). Plaintiff was suspended on June 26, 2014 for an incident occurring on June 25th. (Facts, ¶17). Plaintiff filed a Complaint with the PHRC on January 8, 2015. (Facts, ¶53). That is 196

days after he was notified of his suspension.  The claim is time barred.  Summary judgment

should issue on this claim.

    C.    <u>Plaintiff's Retaliation Claim For Unlawful Suspension in June 2014 Fails.  He
Did Not Engage In Even Arguable Protected Conduct Until After The
Suspension.</u>

Plaintiff's claim that he was retaliatory suspended in June 2014 fails for a second reason.

Claims under the PHRA, Title VII and Section 1981 are analyzed under the same standard.

<u>Connelly v. Lane Constr. Corp.</u>, 809 F.3d 780, 791 fn. 9 (3d Cir. 2016); <u>Anderson v. Wachovia</u>

<u>Mortg. Corp.</u>, 621 F.3d 261, 267-68 (3d Cir. 2010).  There are at least two essential elements to a

retaliation claim.  First, the employee must complain of discrimination.  Second, the employee

must be subjected to an adverse action.  <u>Moore v. City of Phila.</u>, 461 F.3d 331, 340 (3d Cir.

2006) (describing first two elements of prima facie case).  The elements must occur in that order:

complaint and then adverse action.  "[T]he [retaliation] theory doesn't work if the retaliatory act

proceeds the protected activity."  <u>Leitgen v. Franciscan Skemp Healthcare</u>, 630 F.3d 668, 676

(7th Cir. 2011) (quotation omitted).  See also, <u>Phillips v. SEPTA</u>, 2018 WL 827440 *6 (E.D. Pa.

Feb. 12, 2018) (plaintiff must show they "suffered an adverse employment action <u>after or</u>

<u>contemporaneous</u>, with the protected conduct") (emphasis added).  Plaintiff's retaliation claim as

to the June suspension "doesn't work."  Plaintiff was suspended and then in "late July/early

August" he complained about the action, by supposedly raising the issue of his "looks." (Facts,

¶_18).  He claims no earlier protected conduct.  (Facts, ¶52).  The retaliation claim for the June

2014 suspension fails, regardless of the statutory theory.[2]

_____

[2] For purposes of <u>this argument only</u>, Defendant will assume that Plaintiff's comment about his "looks" was made
and constitutes conduct triggering protection against retaliation.

D.    Plaintiff's Section 1981 Claim For National Origin Discrimination Fails.  Section 1981 Does Not Prohibit National Origin Discrimination.

In Count II of his Complaint, Plaintiff asserts he was discriminated against due to his national origin, in violation of Section 1981 (Facts, ¶2).  To the extent Plaintiff is alleging that simply because he was from Trinidad originally (Facts, ¶4) that is why he was terminated, this claim fails.  Section 1981 does not protect against national origin discrimination.  Torgerson, 643 F.3d at 1053; Nadesan v. Citizens Financial Group, 673 Fed. Appx. 47, 49 (2nd Cir. 2016). Plaintiff's claims for national origin discrimination claim under Section 1981 should be dismissed.

E.    Plaintiff's Discrimination Claims Under Title VII, Section 1981 And The PHRA Fail On The Merits.

"All claims of race discrimination brought under Title VII, §1981, or the PHRA are governed by the familiar burden shifting from work set forth in McDonnell Douglas v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed. 2d 66 (1973)."  Vaughan, 2018 WL 2324224 *3 citing Jones v. School Dist. of Philadelphia, 198 F.3d 403, 410 (3rd Cir. 1999).

Plaintiff bears the initial burden of establishing a prima facie case of discrimination. Jones v. Southeastern Pa. Transp. Auth., 796 F.3d 323, 326 (3d Cir. 2015).  If Plaintiff establishes a prima facie case, Railserve must articulate a legitimate, non-discriminatory reason for its decision.  Id.  Railserve's burden is a "relatively light" one.  Fuentes, 32 F.3d at 763.  It is a burden of "production" not proof.  Id. (emphasis in original).  Once Railserve meets its burden, Plaintiff must show by a preponderance of the evidence that Railserve's proffered reasons are pretext for unlawful discrimination.  Id.  This requires the Plaintiff to adduce evidence which demonstrates "both that the reason was false and that discrimination was the real reason."  Id. (emphasis in original).  See also, Boykins v. SEPTA, 722 Fed. Appx 148, 152 (3d Cir. 2018)

(same). "[T]hroughout this burden shifting paradigm, the ultimate burden of proving intentional discrimination always rests with [Plaintiff]." Fuentes, 32 F.2d at 763.

1.    The June Suspension

For purposes of this Motion, Railserve will concede the prima facie analysis as to the suspension. This does not end the matter. Summary judgment is appropriate even assuming a prima facie case is established. Daniels v. School Dist. of Philadelphia, 776 F.3d 181, 198-199 (3d Cir. 2015) (affirming summary judgment "even assuming" prima facie case was made); Vaughan, 2018 WL 2324224 *4 (same). Railserve must simply articulate a legitimate reason for its action. Id. Then the case moves to the pretext stage. Id. Railserve has articulated a legitimate reason for the suspension. Plaintiff was suspended because a vent valve was not opened on a rail car. (Facts, ¶17). Plaintiff must show that this explanation is pretext for discrimination. Proving pretext "places a difficult burden" on Plaintiff. Kautz v. Met-Pro Corp., 412 F.3d 463, 467 (3d Cir. 2005).

It is not enough for Plaintiff to establish that his suspension was unfair or that he should not be blamed. Gardner, 636 Fed. Appx. at 86; Fuentes, 32 F.3d at 765. He must show that Railserve's real motivation was discriminatory. Caprio v. Peters, 345 Fed Appx. 824, 828 (3d Cir. 2009); Cambria v. Association of Flight Attendants, 2005 WL 1563343 *13 (E.D. Pa. June 30, 2005). He cannot. Plaintiff's primary contention is that he was treated differently than two white employees: Larry Williams and Tom Fuller. (Facts, ¶19). Plaintiff must prove they were "similarly situated." Vaughan, 2018 WL 2324224 *4. He cannot. Williams will be addressed first.

Williams was the Assistant Site Leader and higher in the site hierarchy than Plaintiff. (Facts, ¶9). Supervisors are not appropriate comparables to subordinates. Hamilton v. SEPTA,

2014 WL 2862146 *8 (E.D. Pa. June 24,2014) (subordinates and supervisors not proper comparators); <u>Outten v. Genesis Health Care, LLC</u>, 2014 WL 3964918 *7 (E.D. Pa. Aug. 12, 2014). Plaintiff was paid on an hourly basis. (Facts, ¶9). He could be suspended without pay, without triggering possible liability under the Fair Labor Standards Act ("FLSA"). Williams was salaried <u>exempt</u>. (Facts, ¶9). Docking a salaried exempt employee's pay can lead to potential FLSA issues. (Facts, ¶20-21). Arguments can be made that under the FLSA, an exempt employee's pay can be docked under certain circumstances without blowing the exemption. Railserve does not care to take the risk. (Facts, ¶21). So Railserve had Williams work two extra shifts without extra pay. (Facts, ¶20).

Plaintiff may argue that this is too risk adverse. But courts are not empowered to act as "super personnel departments." <u>Abels v. DISH Network Service, LLC</u>, 507 Fed. Appx. 179, 185 (3d Cir. 2012) (quotation omitted). The issue isn't whether Railserve could be more aggressive in suspending salaried employees. It's whether discrimination occurred. <u>Keller</u>, 130 F.3d 1109 (employer's decision need not be "best" or "sound"; issue is whether discriminately motivated). Pretext evidence must be directed at the decision-maker's belief, not how Plaintiff perceives things. <u>Mimi Ma v. Westinghouse Elec. Co.</u>, 559 Fed. Appx. 165, 170-71 (3d Cir. 2014). Plaintiff might have risked the exemption, but he has no evidence that Pullen did not want to do so for reasons related to Plaintiff's protected characteristics. (Facts, ¶20-21). Railserve was entitled to be FLSA cautious. Certainly, Plaintiff has pointed to no minority salaried exempt employee that Railserve suspended while docking their pay.

Fuller was an hourly employee. But the timing of his suspension was different. Plaintiff was suspended in June. (Facts, ¶17). The Fuller incident occurred in <u>July</u>. (Facts, ¶22). In July the Steelworkers filed an election petition. (Facts, ¶23). As part of Railserve's campaign

strategy, it was decided not to suspend Fuller (although he was warned – Facts, ¶22-23).  A minority employee was also not suspended.  (Facts, ¶23).  The strategy did not work – Railserve did not win the election.  (Facts, ¶24).  But, the issue is not whether Railserve's decision to go easy on issuing discipline during an election campaign was wise – it's whether it was discriminatory.[3]  Deans v. Kennedy House, Inc., 998 F.Supp.2d 393, 413 (E.D. Pa. 2014) (issue is not whether employee treated employees identically, but whether differing treatment was the product of unlawful treatment).  Here Fuller's treatment was the result of a union election.  This is a difference or mitigating circumstance that prevents him from being a comparable.  Bazargani v. Haverford State Hosp., 90 F.Supp. 2d 643, 652 (E.D. Pa. 2000).  Summary judgment should issue on the June suspension.

      2.     The Discharge

For purposes of this Motion, Railserve will concede the prima facie case.  This moves the case to Railserve articulating a legitimate non-discriminatory reason for its action.  Phillips, 2018 WL 827440 *3.  Railserve's grounds for termination are extensively set forth in the Facts.  (See, Facts, ¶¶26-36).  But key points will be highlighted.  Stevens (amongst other things) reported that Plaintiff was sleeping.  (Facts, ¶25 and 28).  Sleeping on the job is a legitimate reason for termination.  Railserve collected statements from other employees reporting that Plaintiff had advised one individual that he did not wear fall protection and that he had yelled at another for reporting a near miss.  (Facts, ¶26).  This was unacceptable conduct.  (Facts, ¶24).  To the extent the rail car was not being properly offloaded or a vacuum break was missing, these actions are

---

[3] Obviously, an Employer wishes to put its best foot forward in an election.  One way of doing that is easing up on discipline.  While Crew Leaders were not part of the unit (Facts, ¶23) they can be valuable campaign assets.

ultimately Plaintiff's (as a Crew Leader) responsibility.  (Id.)  Clearly, Railserve has met its

burden of production.  Now the burden shifts to Plaintiff to show pretext.[4]

 Plaintiff denies sleeping and has other explanations for the complaints.  This is

insufficient to establish pretext.  Ade v. Kidspeace Corp., 401 Fed. Appx. 697, 703 (3d Cir. 210);

Sulit v. Fed Reserve Bank of Philadelphia, 2009 WL 2776480 at *6 (E.D. Pa. Aug. 28, 2009).

Moreover, "an employee may use 'statements and complaints by co-workers when making a

decision to terminate an employee' and 'the employee cannot later establish pretext by simply

challenging the veracity of such statements.'"  McNeil v. Greyhound Lines, Inc., 69 F.Supp.3d

513, 524 (E.D. Pa. 2014), aff'd, 628 Fed. Appx. 101 (3d Cir. 2015) (quoting McCormick v.

Allegheny Valley Sch., 2008 WL 355617 *16 (E.D. Pa. Feb. 4, 2008).  "So long as the decision

maker reasonably credited the allegations, an employee's denial is not enough to establish

pretext." Id.  The decision makers reasonably credited these allegations.  (Facts, ¶26).

 While Stevens was the customer's employee, (Facts, ¶11) the same principal certainly

applies.  He was credited in another sleeping situation involving Ray Jennings, an American-

born Crew Member.  (Facts, ¶_35).  Plaintiff has no reason to believe he was biased.  (Facts,

¶12).  As to Reeves (the fall protection issue), Plaintiff concedes that he talked with Reeves

about fall protection.  (Facts, ¶30).  A fair read of Plaintiff's testimony is that he, at best, told

Reeves to use his own judgment.  However, fall protection was to be used, regardless of the

customer's wishes.  (Facts, ¶13).  Plaintiff concedes he talked with Sheridan about not using the

radio to call in "near misses."  (Facts, ¶31).  What Plaintiff appeared to characterize as a

"conversation" with Sheridan, was viewed by Sheridan as being yelled at.  (Facts, ¶26).

---

[4] Railserve's burden is that of production not proof.  Railserve is entitled to rely upon the statements of Stevens and the others to show its state of mind concerning the discharge.  LaRochelle, 2017 WL 4475964 *4 at fn. 4.

In terms of Railserve crediting Sheridan, it should be remembered that his complaint was against the back drop of Stevens reporting Plaintiff was sleeping. (Facts, ¶¶25, 28). It was against the backdrop of Reeves reporting that he was told by Plaintiff that he did not need to wear fall protection. (Facts, ¶25) It was against backdrop of McFadden reporting that the gangway was left down. (Facts, ¶25).[5] All these reports were credited. (Facts, ¶26).

Railserve had statements from numerous people (Stevens, Reeves, Cochran, McFadden and Sheridan) all pointing towards Ramlochan doing wrong. Railserve only had two options (a) believe the reports which establish that Plaintiff was doing a bad job or (b) assume Ramlochan was the victim of a gigantic conspiracy. It is hardly "unreasonable" that Railserve chose the former option. Even if Railserve was wrong and all were wrong or even lying, this does not establish pretext for unlawful discrimination. Geddis v. Univ. of Delaware, 40 Fed. Appx. 650, 653 (3d Cir. 2002) (even if allegations against plaintiff were false, the employer's reliance on those allegations not evidence of bias without other evidence); Sempier v. Johnson & Higgins, 45 F.3d 724, 731 (3d Cir. 1995) ("[p]retext is not demonstrated by showing simply that the employer was mistaken").

The proof is in the pudding. Bob Everett sat in on Plaintiff's interview. (Facts, ¶38). He noted a strong smell of alcohol and that Plaintiff was slurring his words. (Facts, ¶38). Palmer did not see it that way, and Railserve did not rely upon that as a ground for termination. If

---

[5] Stevens also reported a missing vacuum breaker. (Facts, ¶25). Plaintiff acknowledged that Stevens and Reeves had to spend time hunting for it. (Facts, ¶29). Likewise, the rail car was not fully unloaded – it had 9 feet of oil in it. (Facts, ¶32).

Railserve were simply casting about for reasons to terminate, it would have raised the alcohol issue.[6]  But it did not.  The other complaints could not be ignored.

Plaintiff points to two comparables:  Bob Everett and Tom Everly.  (Facts, ¶39).  Plaintiff must show that the two men are similarly situated to him.  Maull v. Div. of State Police, 39 Fed. Appx. 769, 773 (3d Cir. 2002).  This is "no easy task."  Ogden v. Keystone Residence, 226 F.Supp. 2d 588, 603 (M.D. Pa. 2002).  Plaintiff must show that they "engaged in similar conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment."  Chernobai v. Hydraulax Products, Inc., 2015 WL 710464*3 (E.D. Pa. Feb. 19, 2015).  Plaintiff cannot meet this burden.

A gangway was torn off while Everett was working.  (Facts, ¶40).  Everett was disciplined.  He was not terminated; he was suspended for two days.  (Facts, ¶41).  The responsible Crew Member – Ed Fisher, an American born, white male – was terminated.  (Facts, ¶40).  Significantly, the surrounding circumstances were different than Plaintiff's situation. While the gangway was down, Fisher had deliberately misled Everett.  (Facts, ¶40).[7]  There was also no allegation that Everett (a) was sleeping or (b) told an employee not to bother with safety precautions or (c) yelled at an employee for reporting something.  (Facts, ¶42).  For that matter, there was no allegation that a vacuum breaker had gone missing or that a tank car was not unloaded.  The magnitude of Everett's situation and the events of Ramlochan's situation were

---

[6] For example, Plaintiff concedes he has a number of DUI's.  (Facts, ¶37).  If Railserve were simply making stuff up, they could have linked that fact to Everett's report to justify a discharge.  Railserve was not looking for a reason (a pretext) to terminate Plaintiff.

[7] This is significant.  While a Crew Leader can delegate authority, he is ultimately responsible for what happens. (Facts, ¶17).  Here Everett was held ultimately responsible (he was suspended for two days) even though Fisher had acted intentionally and deceived him.  (Facts, ¶40).

entirely different.[8]  There were "differentiating or mitigating circumstances."  Chernobai, 2015

WL 710464*4.  See also, Deans, 998 F.Supp.2d at 412 (plaintiff discharged for tardiness and

attendance not similarly situated to comparators because no other employee had multiple day

absences without contacting management).

The accusation against Everly is that his crew failed to off load some 500 barrels of oil,

resulting in that oil returning to its starting point.  (Facts, ¶43).  Railserve is unaware of any such

error occurring.  (Facts, ¶44).  But, assume it did.  The fact remains that there was (a) no

allegation of sleeping on the job or (b) instructing employees not to use fall protection or (c)

yelling at an employee for reporting a "near miss."  (Facts, ¶45).  Again, the magnitude of the

conduct or error is different.  In other words, there were "differentiating or mitigating

circumstances."  Chernobai, 2015 WL 710464*3.  Plaintiff's discrimination claim based on

discharge fails.

Williams agreed with the discharge decision.  He was a friend of Plaintiff (Facts, ¶14),  a

close enough friend that Plaintiff checked on his wellbeing following flooding in 2017. (Facts,

¶14)  People don't become friends with people that they hold racial animus against.  Palmer

agreed with the decision.  (Facts, ¶15)  Palmer was more than happy to praise Plaintiff when he

did well, hardly the act of a biased decision maker. (Facts, ¶16)  Pullen agreed as well.  A

veteran human resources person is hardly likely to discriminate.  Summary judgment should

issue.

    F.    Plaintiff's Retaliation Claim For Unlawful Discharge Fails On The Merits.

---

[8] Everett was ultimately terminated (Facts, ¶46) when his performance issues like Plaintiff became bad enough.
Thus, to the extent Plaintiff contends only minorities or minority Crew Leaders are terminated, this is wrong.  Fisher
was also terminated – so was Everett. (Facts, ¶40,46).

Retaliation claims under the PHRA, Section 1981 and Title VII are analyzed under the same legal principals.  Vaughan, 2018 WL 23244224 at fn. 4.  Plaintiffs bear a higher burden of proof than in a discrimination case, as proof of retaliation is subject to a "but-for" standard of causation at the pretext stage.  Young v. City of Philadelphia, 651 Fed. Appx. 90, 96 (3d Cir. 2016).

Plaintiff was suspended on or about November 9, 2014 for a series of incidents that resulted in his termination in early December 2014.  (Facts, ¶23).  To establish a retaliation claim, Plaintiff must prove he engaged in protected conduct and that an adverse action followed after the protected conduct.  Leitgen, 630 F.3d at 676.  Plaintiff asserts two acts of protected conduct.  First, there is an allegation that Plaintiff confronted Palmer about his June 2014 suspension, when he asked whether the suspension was due to his "looks."  (Facts, ¶52). Second, there is the letter sent to Pullen on or about November 12, 2014.  (Facts, ¶53).

As to the "looks" allegations, it allegedly precedes both the November suspension and ultimate December discharge.  (Facts, ¶18).  The problem for Plaintiff is there is no record evidence that such a statement was made.  Despite three opportunities at his deposition (including once under questioning by his counsel) Plaintiff could not recall any such statement being made.  (Facts, ¶18).  When a plaintiff cannot recall the allegedly protected conduct, there is no evidence to support the allegation for purposes of summary judgment.  Henderson v. Mercy Catholic Medical Ctr., 2018 WL 3344655*8 (E.D. Pa. 2018) (employee could not recall at deposition complaining about discriminatory behavior).  There is no evidence that Plaintiff

engaged in protected conduct before Palmer and Williams suspended Plaintiff on November 9, 2014.[9]

Moreover, the comment occurred, if at all, in the late July/early August timeframe. (Facts, ¶18). This is too long a timeframe to raise an inference of discrimination, as he was suspended in November for various reasons and then terminated in December for these reasons. Williams v. Philadelphia Hous. Authority, 380 F.3d 751, 759-60 (3d Cir. 2004) (two-month gap does not suggest retaliation).

The November 12, 2014 letter (Facts, ¶47) was sent and received by Pullen before the December 2014 discharge decision. However, Palmer and Williams had already made their determination that Plaintiff should be suspended (and discharged) before that (i.e. on November 9, 2014). Both men agreed with the discharge decision. (Facts, ¶14-15). Decision makers cannot be charged with a retaliatory motive, based upon protected conduct of which they are unaware, because it had not occurred. Vaughan, 2018 WL 2324224*4. Pullen did know. But the letter did not accuse Pullen of doing anything wrong. He had no reason to be upset by its contents. There is no record evidence that Pullen would have been motivated in any way to discharge Plaintiff due to the November 12, 2014 letter. All three men deny a retaliatory motive. (Facts, ¶14-15).[10] This includes Williams who was Plaintiff's friend. (Facts, ¶14).

---

[9] Nor is it clear that referring to one's "looks" is protected conduct. It is the sort of comment anyone might use and does not properly put the employer on notice that unlawful discrimination is being claimed. Mikell v. Marriott Intern., Inc., 789 F.Supp.2d 607, 619 (E.D. Pa. 2011); Sanchez v. SunGuard Availability Servs. LP, 362 Fed. Appx. 283, 288 (3d Cir. 2010). In any event, the comment had no impact on Palmer – he gave Plaintiff a discretionary raise and praise, in August 2014. (Facts, ¶18)

[10] Plaintiff may point to certain deposition testimony by Williams that he was upset to learn in 2017 that Plaintiff was suing the Company. That is irrelevant. The issue is not how Williams might have acted if he had known of protected conduct. Cases are not tried on alternate facts. The facts in this case are that there is no record evidence that Williams was aware of any protected conduct.

In any event, Railserve has stated why it fired Plaintiff.  (Facts, ¶36).  The issue becomes one of pretext.  It is Plaintiff's burden to establish that the real reason was retaliatory.  Krause v. Am. Sterilizer Co., 126 F.3d 494, 501 (3d Cir. 1997).  As explained in Part II (E)(2) above, Railserve had legitimate lawful business reasons for terminating his employment.  For the same reasons that Plaintiff's efforts to show those reasons to be a pretext for unlawful discrimination, they fail as to his claim that they were pre-textual to cover a retaliatory motive.  Plaintiff's burden is even greater in the retaliation context.[11]  Young, 651 Fed. Appx. at 96; Verma v. Univ. of Pennsylvania, 533 Fed. Appx. 115, 119 (3d Cir. 2013) (Section 1981 case).

## III.    CONCLUSION

Defendant's Motion for Summary Judgment should be:  GRANTED.

Respectfully submitted,

**THOMPSON COBURN LLP**

By: _/s/ Timothy J. Sarsfield_
    Timothy J. Sarsfield, *admitted pro hac vice*
    One US Bank Plaza, Suite 2700
    St. Louis, MO 63101
    (314) 552-6000
    (314) 552-7000 (fax)
    tsarsfield@thompsoncoburn.com

Attorneys for Railserve, Inc.

---

[11] Plaintiff did not identify his counsel's letter of December 3, 2014, as an act of protected conduct.  (Facts, ¶52).  Even if considered it does not change the analysis.  Pullen had made the decision to discharge.  However, the press of other matters delayed his communicating the decision to Ramlochan.  Counsel's letter reminded him that he had not done so.  (Facts, ¶50).  Because Plaintiff had counsel, Pullen thought best if Railserve's counsel communicate the decision  (Facts, ¶51).  Plaintiff's counsel sending a letter did not mean Railserve could not move forward with the discharge.  Clark County School District v. Breeden, 532 U.S. 268, 271-72 (2001) ("Employers need not suspend previously planned [action] upon discovering that a [discrimination] suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality"); Mikell, 789 F.Supp.2d at 619.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel hereby certifies that on the 20th day of July, 2018 a copy of the foregoing Defendant's Memorandum of Law in Support of Defendant's Motion for Summary Judgment was served via the Court's CM/ECF system which will send notification of such filing to all parties of record.


_____   /s/ Timothy J. Sarsfield_____